Com. *v.* Parshall, Appellant.

Argued October 23, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

*Samuel H. Jubelirer,* for appellant.

*Chester B. Wray,* District Attorney, for appellee.

OPINION BY HIRT, J., March 2, 1940:

Defendant was convicted of receiving stolen goods. On the trial of this case, guilty knowledge was the issue.

Pennsylvania Railroad Company for some time had been collecting nonferrous scrap metal at various points along its lines and had shipped it to its foundry property in South Altoona where it was stored. For the most part it was metal removed from equipment or property of the railroad in making repairs or replacements and from the peculiar nature and shape of various pieces of metal, much of it could be identified as "Pennsylvania Railroad scrap." On August 29, 1938 the defendant sold and delivered about three thousand pounds of copper, brass, lead, and aluminum scrap to a junk dealer in Cresson. On examining the property after the sale, the buyer found the mark "P.R.R." on a number of pieces of the metal and immediately notified the railroad police, whereupon the defendant was apprehended and charged with this offense. The material which defendant sold was identified as railroad scrap of the kind which was stored in the Altoona yard of the Pennsylvania Railroad and at no other place, and the testimony is that none of this scrap had been sold. This with other testimony made out a prima facie case of larceny. There was no evidence, however, as to when this property had been stolen or that the larceny was recent.

The defendant, whose business was that of buying and selling metal scrap, testified that he bought most of the material in question, from "junk pickers" and that he himself had "picked" only a small part of it. He did not deny that it was railroad scrap but maintained that the Pennsylvania Railroad had formerly operated dumps for the storage of similar scrap on railroad property at Pine Croft, at Columbia and at Sunbury and that on establishing the storage yard at Altoona, the company

had removed most of the material from these dumps and had abandoned the rest. Defendant lived within 150 yards of the Pine Croft dump. He testified that he bought a large part of the scrap from five named pickers who lived in the neighborhood, who had gathered it from the abandoned railroad dump at Pine Croft; that he bought the remainder, in small lots, from strangers in East Altoona, at Columbia and at Sunbury not far from his home.

Proof of guilty knowledge, involving guilty intent, is essential to the Commonwealth's case, but may be supplied by other than direct evidence. "Knowledge is of course subjective, and whether a person knows a thing or not is generally, or at least frequently, determined by circumstances. The jury may infer, from circumstances tending to show knowledge on the part of a defendant, that he knew that the goods he was buying were stolen, but in order to find him guilty of the offense charged they must be satisfied beyond a reasonable doubt, that he *knew* they were stolen": *Com. v. Baker*, 115 Pa. Superior Ct. 183, 175 A. 438; *Com. v. Sendrow*, 119 Pa. Superior Ct. 603, 181 A. 450. 2 Wharton Crim. Law 1232.

To rebut the inference of guilty knowledge from the character of the material, the circumstances of his possession and the sale of it at Cresson, a point distant from his usual market in Altoona, defendant offered to prove by nine witnesses that the railroad had abandoned the material on the Pine Croft dump and had permitted scrap pickers to come on the property and to gather it for their own uses. The trial judge sustained the Commonwealth's objection to these offers and all of this testimony was excluded. One of these offers of proof from the witness Litz, who had testified that he sold a part of the material in question to the de-

fendant, the subject of the fifth assignment of error, is typical: "We further propose to prove by this witness that he has been digging on this Pine Croft dump for years and that there are no trespass signs, and further, the officers on duty and stationed at the dump pile have given their consent, both tacitly by permitting the witness to dig on the dump pile and by permission and consent which have been given to him by the various officers on the dump pile."

It seems clear that the refusal of testimony of this class was fundamental error. If the railroad permitted the gathering of this scrap by those who sold it and that fact was known to the defendant, he is absolved from any inference of guilt. In general, "On principle, it is always relevant, where any act is shown or conduct charged against the accused, for him to explain such act or conduct by showing some other hypothesis equally or more natural, as a reason for his conduct, and such explanation should always be received": I Wharton Crim. Ev. 310; 1 Wigmore Ev. 34. Where the charge is receiving stolen goods it is always proper for the defendant to show title or right of possession of the property in the person from whom he received it, by the best evidence available. It may be that this testimony, in the light of all the circumstances will not absolve the defendant from guilt, but that is for the jury to say after determining the credibility of these witnesses and the weight of their testimony.

Judgment reversed and a new trial awarded.